Long time in one of the busiest districts in the country, the Middle District of Florida. We serve together as Chiefs. She is a leader in the judiciary. She's always picked and chosen to serve on committees by the Chief Justice. Very well respected, very experienced, and we're very lucky to have her with us this week. We will begin with our first case. It's styled Amos v. Wright. Actually, Amos is the appellee and Wright's the appellant, but that's how it's styled. Starting, of course, with the attorney for the appellants, Ms. Sharman. May it please the Court, my name is Joelle Sharman. I'm with the law firm of Lewis-Brisbois. I represent the Wright claimants who are Roderick and Barbara Wright, ANT, LLC, and ZTF Family. The theme of this case is don't be upset by the results you didn't get with the work you didn't do. This Court should vacate the jury's verdict, reverse final judgment, and remand this case for entry of judgment for Mr. Wright, Mr. Amos' claim for fraud, because as a matter of law, he did not and could not establish reasonable reliance or proximate causation. Where in the record did you raise that argument before the district court? In the third transcript from February 11, 2016, on page 190. What was the argument there? We feel that the evidence has not been sufficient as a matter of law to create a genuine issue to go to the jury as to the claims of Mr. Amos' for fraudulent inducement. That's it? And then at the close of evidence, the Wright claimants reasserted the same motion, but chose, quote, not to spend any more time arguing about whether or not there are issues of fact for the fraud on each side. Isn't that essentially a concession, that you were not arguing that fraud was— you said that it was a fact issue, right? That was a concession. So it was a reiteration of the prior argument that the trial court shut down, that judgment as a matter of law should have been entered on the fraud claim due to Mr. Amos' failure to establish the elements of a fraud claim. I thought your argument was primarily in your brief and orally ratification and a waiver type argument. There were other arguments thrown into the motion for judgment as a matter of law, but orally at trial in two places, this argument was raised and preserved. It wasn't as articulate as it could have been, but the law only requires that it be preserved and that that ground be stated. It was closely related to the arguments made in this appeal, and there's no surprise. There was no mention of reasonable reliance, though, that argument. Well, it's a burden that he did not meet his burden of establishing fraud. Reliance and proximate cause are elements of the cause of action for fraud. Reasonable reliance is essentially a fact-based argument, and in that very generic sort of touching on the issue, there was no discussion of why the facts were inadequate or anything of that nature to tip the judge off that that's what you were focusing on. It could have been a more articulately made argument, I agree. But it was still Mr. Amos' burden to prove each element of the case of fraud, and Mr. Wright's attorney did raise at the close of Mr. Amos' case and at the close of evidence that he did not meet his burden. Well, even assuming he preserved it, your adversary indicates there's plenty of support in the record anyway for the jury's decision and that the jury could have concluded he made various misrepresentations about the property. Why do you dispute that argument? Actually, the fact of the misrepresentation is not the basis of the appeal. The basis is that Mr. Amos was a sophisticated businessman experienced in real estate. He had the burden to show that any misrepresentations that allegedly were made, he had the right to rely on, and that those misrepresentations caused the damages that he sought. Mr. Amos did not make any reasonable investigation before signing the guarantees or before signing the operating agreement. In his words, he took Mr. Wright's word for it. This was an arm's-length transaction. Mr. Wright did not owe Mr. Amos a duty to disclose anything. Mr. Amos had the responsibility to make sure that the properties listed in the operating agreement were unencumbered. One of the properties in the operating agreement actually said it was encumbered. So he had an obligation to go out and make sure that Mr. Wright wasn't lying to him? He had an obligation to make sure that what he was signing was accurate. He had no right to rely on Mr. Wright's representations orally about anything because it was an arm's-length transaction between two sophisticated real estate businessmen in an arm's-length joint venture. When a layperson goes out and buys a house, they do a title search. They hire an attorney. They don't just sign the mortgage. They just don't sign the closing papers. Mr. Amos took Mr. Wright's word for it, and he is a sophisticated businessman who testified that he knew the right— You can tell somebody, I'm going to sell you a house. I own it. And they say, I'm going to buy it and pay you. And if they screw up on the title search or whatever, good for the guy that lied. He gets away with it. Is that your argument? No. In that particular case, you have a layperson, two laypeople. You're not dealing with an arm's-length transaction where you have two sophisticated businessmen held to a higher standard than the average layperson. But this is not so much sophistication as outright lying, is it, that your client misrepresented his ownership in Safe Harbor, said he owned 100 percent of various parcels, but he didn't, and misrepresented his ownership interest in Noriega Point. Those sound like lies. No, Your Honor. There can be no misrepresentation if the facts are in front of you and they belie what you are being told. For the Safe Harbor estate property, Mr. Amos said that Mr. Wright misrepresented in a prior agreement that he owned that property free and clear. But the actual operating agreement, which by its terms superseded that prior agreement, said on its face, this property has a $3.8 million mortgage on it. But there's an explanation for that. And aren't these all just questions of fact for the jury? In terms of whether there was a misrepresentation, yes. In terms of reasonable reliance, approximate causation, no. Those aren't questions of fact, reasonable reliance? No, because he would have the – if Mr. Amos had testified that he did even the minimal due diligence before he signed that agreement, if he had asked to see the documents referenced in the operating agreement, if he had asked to see the promissory note for the blank guarantee he was signing, there could have been a question of fact. He didn't do anything. He relied on the oral word of a businessman, and that is not enough for reasonable reliance under the law. Under Butler v. Usom, it's not enough. He is held to the standard of what a reasonable investigation would have revealed. If he had gotten the promissory note from the bank before he signed that guarantee, he would have seen on the face of the note it said this is a $4. million loan to purchase Safe Harbor Estates. He didn't get that promissory note. He signed the blank guarantee and testified at trial he knew the consequences of signing a blank guarantee, but he signed it anyway. He also testified at trial that as to those two properties, Lot 160 and Property B, there's all these different names of properties in there, he knew they were encumbered when he signed the agreement, but he signed it anyway because Mr. Wright allegedly puffed that he could get rid of the encumbrances, and he believed him. In terms of the Noriega property, to the extent there was a misrepresentation, which is not clear, that would be a question of fact, but signing a guarantee, signing an operating agreement, without checking the records to see if that property was encumbered, if Mr. Wright truly did have a transferable interest, if there were any liens attached to the property, he did not do his homework, and that is not reasonable in an arm's-length transaction. That lack of reasonable liens also destroys the causal link between his damages and the misrepresentation. So while there could have been a misrepresentation made that created a question of fact, the Court should have entered judgment as a matter of law because the reasonable reliance and proximate causation elements were missing. Mr. Wright and the Wright claimants also countersued Mr. Amos for breach of the operating agreement and for fraud. Mr. Amos defended on fraud, and for the same reasons he could not state a prima facie case for fraudulent inducement, he could not state a defense for fraud, and that should not have gone to the jury. To the extent a new trial is ordered on Mr. Wright and the Wright claimants' claim for breach of contract, Mr. Wright should be allowed to testify at retrial as to the value of the Biloxi property. The Wright claimants alleged that Mr. Amos fraudulently misrepresented the value of the Biloxi property, but the District Court would not allow Mr. Wright to offer his opinion as to what that value was. Mr. Wright was a licensed real estate broker in two states. He was a sophisticated businessman. He was the managing director of ITSA who had a legal right to own that property. Mr. Wright testified that he reviewed ITSA's business records, and with his experience, that bolstered his competence to testify. Competence is not based on title. The fact that he was not the owner of the property is not dispositive. It's whether he had the information standing in that position to offer a competent opinion as to the value, and the record reflects that he did. In conclusion, the Wright claimants' request that this court reverse the denial of judgment as a matter of law against Mr. Amos on his claim and defense of fraud, vacate the jury's verdict, remand for entry a final judgment against Mr. Amos on his claim and defense of fraud, and order a new trial on the Wright claimants' breach of contract and fraud claims, and to allow Mr. Wright to testify at that retrial as to the value of the Biloxi property. Thank you. Good morning. Good morning. May it please the Court, my name is Robert Beasley. I represent Mr. Amos and also represented Mr. Amos at the trial level. The way this style reads is indicative of the way this case developed. The FDIC was the plaintiff, sued Mr. Amos on his guarantee, so you have the FDIC, the plaintiff, be Amos, and then Mr. Amos filed an answer and then a third-party claim against Mr. Wright for the fraud. Mr. Wright then filed a claim back against Mr. Amos for breach of the contract. Mr. Amos had no breach of contract claim, but he then affirmatively defended on the breach of contract claim on two bases, one that a pre-contractual fraud was committed, and then also that there were material breaches of the contract by Mr. Wright which relieved Mr. Amos. So procedurally you had a two-part trial, which is why you get so many different representations or misrepresentations by Mr. Wright admitted into the evidence throughout because you had the pre-contractual fraud issue, which was solely the note, the promissory note, getting him to sign the guarantee and the fraud related to that. And then you had the defensive fraud issues related to the host of misrepresentations that were made. There was a lot of factual issues discussed. I do want to address Judge Pryor's one question about whether it was brought up. Page two of the reply brief cites to in total the page 190 of the transcript, which talks about where the opposing counsel brought up the issue in the motion. And all the words are there, and you're right, reasonable reliance is not mentioned at all. Reasonable reliance being an affirmative defense that was not pled, was not sought to be pled, nor even mentioned even at that late stage. So one of your arguments is they have not preserved the issue that seems to be the keystone of their appellate issue, which was reasonable reliance was not shown. That was not focused on in the motion for judgment as a matter of law. Yes, Judge Carnes. The defense of reasonable reliance would have been a defense that they would have needed to seek to add. They didn't add it. There was no evidence brought out towards it throughout the trial, whether it was reasonable or not, although you could take some of the cross-examination of Mr. Amos about his sophistication as kind of leading towards that. But more importantly, for today's purposes and for appellate purposes, when the motion was brought at the conclusion of the evidence, there was no mention of it at all. The reasonable reliance wasn't mentioned at all. First time I heard of it, having gone through the trial, was in the appellate briefing. First time it specifically attempted to be referenced is in page 2 of the reply brief. A couple of the facts that are interesting, and I don't want to retry the case because the case is already concluded and everything that would relate to the facts really falls under the abuse of discretion standard, but we talked about Norigo Point, and it's interesting the transformation of that argument. He said he owned it. Then at trial he turned it into his testimony, and this is on page 31. He turned it into I had a contractual interest in it and then admitted a contract unsigned into this court, into the record for the jury to review to represent his contractual interest. Then on cross-exam, beginning on page 31, we presented him with a signed version. He admitted the unsigned version without explanation, which said he had a contractual interest. Then we admitted on cross-exam we presented him with a signed version by both parties that he used in another action to sue those other parties. So he filed in another federal action to enforce the contract. It was signed, and guess what? The signed version doesn't give him that contractual interest. So he lied about owning it. Then he came to the court and tried to pass off an unsigned contract that said he owned it. He turned owning it into contractual interest. Then he went to this jury and said, here's how I owned it. Then when we went on cross-exam, well, here's a signed contract. Why doesn't it have the same details? Well, it's different. Okay, well, it's different. Well, but you used this contract to try to sue your partners. That is the story of this case. It twists and it twists and it twists and it turns. And so— Assuming, and I understand your very strong point that reasonable reliance was never mentioned at all. That's a problem for them. But assuming that it was preserved, what would your argument be to counteract your adversary's argument that you did not make out a case for reasonable? The reason I just dove into those facts, and we're going to dive into the ones about Biloxi and Safe Harbor here in a minute, is to show that reasonableness. There was a representation of ownership. There was then, as late as trial, a further representation that changed the nature of the ownership. And then even it took as late as cross-examination at trial for the truth to come out, if you would. So that's one aspect. Just as to Noriego, Lot 160 is interesting. Lot 160 was a vacant parcel. It is acknowledged, and they point to this acknowledgement, it has always had a spoils easement over it. A layman could recognize that because it is the only piece of beachfront down in the Destin Pass with nothing on it. So something's wrong with it. And it has an Army Corps of Engineers spoils easement that allowed them to dump the spoils from the dredging of the pass. Mr. Wright's representation, to which we took no issue with, was that he could get it removed. That was his puffing. That really wasn't the subject matter of any of the multiple fraud issues. But he also didn't own it. He also had no contractual interest in it. And it also had $5 million of debt on it that he didn't disclose. So the fact that he could or couldn't have gotten that done was not true because he didn't get it done. But all those other fraudulent facts are most interesting. Let's go to his house. They call it Safe Harbor. That's what he called it in the glossy materials. It was his house that he hadn't paid the insurance on in a year. He hadn't paid his taxes on it. He hadn't paid his debt to the bank. The bank was in default. This bank, I pointed out the procedural posture so you saw it from the beginning, was going under. It was taken over by the FDIC for a series of bad loans to include this one. These bank officers, the FDIC eventually put them in prison for bank fraud on a series of straw transactions, this being one of them. The bank officers, Mr. Wright came up with the idea to refinance the house by getting new blood on the guarantee. That was Mr. Amos. They took a bad debt on his house, sold it as a project, refinanced it by transferring it from one company to another, and Mr. Amos signed that guarantee, and therefore they could book the loan as a good loan. That's what happened. Those bank officers went to jail for that transaction and three others. So on lot 160, the misrepresentations were vast. This free and clear argument only becomes relevant because it wasn't, and the loan was past due, and the loan that they took out that Mr. Amos guaranteed didn't go to develop it. That was the fraud. Not the amount, not that he was going to get a loan because he knew those things, but that money, that money didn't come out and go to develop Safe Harbor. What it went to is to pay off Mr. Wright's bad debt and to bring the bank's loan back into good standing. That's the fraud. And for those reasons, the jury found the reliance element, even though reasonable reliance wasn't pled. That it was reasonable, I think, is implicit in the reliance element of fraud, and the jury certainly had no issue with finding reliance. Last thing I want to talk about is Biloxi property because it was mentioned, and, of course, we only get there if the court reverses and then there's the issue. But let me just mention where they went with this. There's a case, the salvage and surplus case in Florida, Weintraub, and it extends this notion in Florida law that an owner can testify as to the value of their property. So you start with an owner in Florida can testify as to the value of their real property. That's a principle of law. Weintraub, a salvage surplus case, extends that to a corporation, and it says this. An officer of a corporation can testify as to the value of the real property owned by the corporation if they can establish that that officer is sufficiently familiar with the operations of the company, the books and records of the company, and the asset. Because you couldn't just put some straw person up as with an officer title, and then they become an appraiser. That's what this whole thing is about is an end run of the appraisal aspect, that value of a real property is an expert opinion versus a layman's opinion. That's how we get to this rule. So in the Weintraub case and all the cases that follow, the key element is that it's an asset that the company owns. You heard the twist because I just heard it, and I heard it at trial. Mr. Wright was a manager of ITSA, I-T-S-A. ITSA did not own the Biloxi property. It didn't own it. So you missed that huge critical element that it has to be the value of the property that the company owned. What they said was ITSA has a contractual interest. Well, that's not enough because the exception is already broad enough, and there's no case that's ever expanded it to, oh, and if you have a contractual interest, then that turns you into the professional appraiser of the value of the property that you're going to buy. That law doesn't exist in Florida. Now, but let's go further in, drill down into that further.  The property was in Mississippi. He was presented in his deposition with five appraisals over the years of the Biloxi property, and on all but one of them, 2010, on the other four, he said, I don't have sufficient knowledge to tell you whether that's a good number or not. I don't know. So he turns I don't know on five different appraisals, and in 2010, the only one that he said anything about is he had concerns about its value. He turns that I don't know into a later trial effort to be an expert on the value. That's the end of that. First of all, ITSA didn't own it, but second of all, he had already testified that he didn't have the knowledge. He can't now grow the knowledge because they didn't have an appraiser, and that's what the trial court found. So we never get to a scenario where Mr. Wright, as a member of ITSA, gets to testify about property that ITSA doesn't own in another state in which he's not licensed, and in a scenario where he's already testified, he doesn't know the value. With that, and if there's no further questions, I will concede the rest of my time. Thank you. May it please the Court. Opposing counsel made an interesting point in arguing against the lack of reasonable reliance and proximate causation. Counsel said that that defense was not preserved below. But reasonable reliance and proximate causation is not a defense. It's part of the prima facie case that his client was required to meet for this case to go to a jury. For you to preserve that on appeal, you have to alert the district judge as part of the motion for judgment as a matter of law that that is the point on which you think there was a defect in proof. And what he's saying is there was no hint of that to the district court judge. Well, Judge Carnes, the record belies that. The record shows that twice, on February 11, 2016, and again on the next day, his lawyer said that the evidence has not been sufficient to create a genuine issue of fact as to the claim of fraudulent inducement. There are two cases which support that that issue is preserved. The first case is Ramirez at 686 F3D 1239. A litigant's failure to raise a specific argument in a Rule 50A motion does not waive appellate review if, as here, the argument involves a pure issue of law. There were no disputed facts as to what Mr. Amos relied on. The only question was, was that reasonable? And that is a question of law. The other case is Roofing and Sheet Metal Services v. La Quinta at 689 F2D 982. For that same proposition, and there's a third case, I apologize, Ross v. Rhodes Furniture 146 F3D 1286. If there is no surprise and the arguments are closely related, the fact that they are not identical does not mean it's waived. The arguments made at the close of evidence and at the close of trial was that he did not state a claim of fraudulent inducement to go to the jury, and he didn't. If there are no more questions, we will rest.  Thank you. Thank you.